UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JODY CARR,<br><br>                Plaintiff,<br><br>vs.<br><br>CHAD PAGE, et. al,<br><br>                Defendants. | Case No. 1:20-cv-00146-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE: DUE PROCESS CLAIMS** |

The fee-paid Amended Complaint of Plaintiff Jody Carr was conditionally filed by the Clerk of Court due to his status as a prisoner. Dkt. 9. A "conditional filing" means that Plaintiff must obtain authorization from the Court to proceed. Regardless of payment of filing fees, all prisoner complaints seeking relief against a government entity or official must be screened by the Court to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915A. The Court must dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(A)(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff brings 65 claims in his Amended Complaint. They are tied together loosely by threads of conspiracy and retaliation. Many are unrelated to each other, and many lack adequate factual support. To comply with General Order 342 and to further the goal of judicial efficiency by simplifying this litigation, the Court will order the Clerk of Court to sever some of Plaintiff's claims into different lawsuits, with the Amended Complaint filed as the operative pleading in each case and with all cases to remain with this Court for screening, rather than be randomly assigned among the judges.

This Initial Review Order addresses only the due process claims. Additional screening orders on Plaintiff's other claims will issue. The present case, No. 1:20-cv-00146-DCN, will be the vehicle for Plaintiff to present all remaining claims that are not addressed in other screening orders.

## CASE MANAGEMENT PLAN AND REQUIREMENTS FOR AMENDMENT

Plaintiff brings nine due process claims (Claims 2(a) through (i)). They each need factual clarification. The incidents complained of happened at different times and involve several different defendants. To keep the claims that arise from different time periods and different incidents separate, and to help clarify the factual basis for each, the Court will order the Clerk of Court to open several new cases for the claims, as set forth below.

Plaintiff will be required to follow these case management guidelines for each of his separate cases, including this one. Plaintiff is placed on notice that failure to follow these guidelines and failure to follow the Court's orders may result in dismissal of his cases

with prejudice under Federal Rule of Civil Procedure 41(b), Title 28 U.S.C. § 1915A, or the Court's inherent authority to manage its cases and regulate its docket.

The Court provides Plaintiff with the standard of law for due process claims. He has had one opportunity to amend. He will be provided a final opportunity to state the factual support for his claims in a second amended complaint, or the claims will be dismissed with prejudice.

In regard to the filing of second amended complaints in the new actions, Plaintiff must follow these case management guidelines:

A. No amended complaint may exceed 20 pages.

B. Amended complaints may not contain introductions, case citations, argument, statements that pleadings are made under "imminent danger," requests for temporary or preliminary injunction relief, or requests for judicial notice.

C. Each amended complaint must contain factual allegations that address every element of the claim asserted, according to the applicable standard of law set forth below.

D. No new or additional claims or defendants may be added to any amended complaint.

E. No attachments may be submitted with any complaint unless the Court specifically orders Plaintiff to submit a particular attachment, and, in that instance, only that particular attachment may be submitted.

F. No handwritten summonses may be submitted in this case or any future case.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

The Court does not issue handwritten summonses.

## STANDARDS OF LAW GOVERNING DUE PROCESS CLAIMS

1. **General Standard of Law for *Procedural* Due Process Claims regarding Segregation**

To state an actionable Fourteenth Amendment procedural due process claim, a plaintiff must allege facts showing "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (citation omitted).

### A. *Liberty or Property Interest*

Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 482-86 (1995). The Due Process Clause itself does not confer on prisoners a liberty interest in being confined in the general prison population instead of segregation. *See id.* But, a state may create a "constitutionally-protected liberty interest by requiring its decisionmakers to base their decisions on objective and defined criteria," before segregating prisoners. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). If a state law or prison regulation is deemed to have created a liberty interest, the next step is to determine whether a violation of the law or regulation is actionable by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

### B. *Deprivation of Liberty or Property Interest*

Liberty interests created by state law or prison regulations that entitle an inmate to due process are "generally limited to freedom from restraint." *Sandin*, 515 U.S. at 484

(internal citations omitted). Typically, segregation "in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (collecting cases). Rather, a liberty interest arises only if the conditions of segregation impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

To determine whether segregation poses an atypical and significant hardship, courts must conduct a "case by case, fact by fact" analysis of the "condition or combination of conditions or factors" that the plaintiff experienced. *Serrano*, 345 F3d. at 1078 (citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.1996)). That analysis includes:

(1) if disciplinary, whether that segregation was essentially the same as discretionary forms of segregation, such as administrative segregation; (2) whether a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) whether the length of the plaintiff's sentence was affected. *Sandin*, 515 U.S. at 486-87; *see also Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (clarifying that, to prevail, a prisoner must establish a liberty interest, showing "that his confinement, *whether administrative or disciplinary*, presented "the type of atypical, significant deprivation [that] might conceivably create a liberty interest" (emphasis added).

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the United States Supreme Court identified a set of conditions that met the "atypical and significant hardship" standard:

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for

> 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30–day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30–day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP.

*Id*. at 223-24 (citations omitted).

It is now fifteen years post-*Wilkinson v. Austin*. In reviewing a claim "case by case" and "fact by fact," courts must remain mindful of modern-day research documenting the serious effects solitary confinement can have on prisoners. In 2018, Dr. Craig Haney, Distinguished Professor of Psychology, University of California, Santa Cruz, observed:

> Largely because of the robustness and theoretical underpinnings of the data, numerous scientific and professional organizations have reached a broad consensus about the damaging effects of solitary confinement.... The American Psychological Association (2016, p. 1), the world's largest professional association of psychologists, asserted that "solitary confinement is associated with severe harm to physical and mental health among both youth and adults, including: increased risk of self-mutilation, and suicidal ideation; greater anxiety, depression, sleep disturbance, paranoia, and aggression; exacerbation of the onset of pre-existing mental illness and trauma symptoms; [and] increased risk of cardiovascular problems."

Craig Haney, *The Psychological Effects of Solitary Confinement: A Systematic Critique*, 47 Crime & Just. 365, 368 (2018).

Though no recent United States Supreme Court opinion has squarely addressed solitary confinement, several Justices have written concerning it. *See Apodaca v. Raemisch*,

139 S.Ct. 5 (2018) (Sotomayor, J., issuing a statement respecting the denial of certiorari ("Courts and corrections officials must accordingly remain alert to the clear constitutional problems raised by keeping prisoners like Apodaca, Vigil, and Lowe in "near-total isolation" from the living world ... in what comes perilously close to a penal tomb."). *See Ruiz v. Texas*, 137 S.Ct. 1246 (2017) (Breyer, J., dissenting from denial of stay of execution) ("If extended solitary confinement alone raises serious constitutional questions, then 20 years of solitary confinement, all the while under threat of execution, must raise similar questions, and to a rare degree, and with particular intensity."); *Davis v. Ayala*, 576 U.S. 257 (2015) (Kennedy, J., concurring) ("Of course, prison officials must have discretion to decide that in some instances temporary, solitary confinement is a useful or necessary means to impose discipline and to protect prison employees and other inmates. But research still confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price.").

Many prisons have changed the policies and procedures governing solitary confinement units based upon such research. As noted above, the particular facts of a prisoner's segregation must be taken into account in a court's "atypical and significant hardship" analysis.

### C. *"Some Evidence" Standard*

Due process for all types of segregation demands only that the prison hearing officer's decision be supported by "some evidence," and that the evidence "have some indicia of reliability." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986) ("*Toussaint I*"), *abrogated in part on other*

*grounds by Sandin v. Conner*. The "some evidence" standard is minimally stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached." *Hill*, 472 U.S. at 455-56.

Within the "some evidence" determination, the credibility of witnesses and evidence is for prison officials, not the court or a jury, to decide. *Hill*, 472 U.S. at 455. Statements by unidentified inmate informants constitute "some evidence," provided that the record contains facts from which it could reasonably be concluded that the information was reliable. *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). When reviewing the facts of the hearing, the Court considers partiality, such as whether the hearing officer or appellate authority was involved in the investigation or charging process. *Walker v. Sumner*, 14 F.3d 1415, 1419–20 (9th Cir. 1994), *overruled on other grounds by Sandin*, 515 U.S. 472. Importantly, the "some evidence" inquiry is not aimed at whether state actors followed state law or prison procedures, but whether the procedural due process protections provided "survive constitutional scrutiny." *Walker*, 14 F.3d at 1420.

### D. *Disciplinary Segregation*

Disciplinary segregation, as its name suggests, is for the purpose of punishment. The United States Supreme Court has held that, when a prisoner is punished for breaking prison rules in the course of his punishment for a crime against society, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976) ("The Clause does not

require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive."). "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).[1]

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The minimum procedural protections prison officials must provide a prisoner facing disciplinary charges are: (1) written notice of the charges before the disciplinary hearing; (2) at least 24 hours to allow the prisoner to prepare for the hearing; (3) the right to call witnesses and present documentary evidence, unless doing so would be unduly hazardous to institutional safety or correctional goals; (4) assistance from another prisoner or staff person where the issues presented are complex or the prisoner is illiterate; and (5) a written statement by the factfinders detailing the evidence relied upon and the reasons for the disciplinary action; *See id.* at 564-70.

The prisoner does *not* have the right to cross-examine witnesses, but prison officials may allow it at their discretion, for example, if it does not pose a security issue or if the witness has not expressed fear of reprisal. *Wolff*, 418 U.S. at 567-68. There is no right to counsel. *Id.* at 569-70. The factfinder may be any prison official, but, weighing into the analysis is the question of whether he or she has "unlimited discretion" or is governed by

---

[1] *Cf. Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer of a prisoner from a prison to a *mental hospital* is *not* within the range of confinement justified by imposition of a prison sentence).

prison regulations setting forth the goals of segregation. *Id*. at 571.

### E. *Administrative Segregation*

"Administrative segregation" is a catch-all phrase for any form of non-punitive segregation. For example, prisoners may be segregated to protect them from other prisoners; to protect other prisoners from the segregated prisoner; or pending investigation of disciplinary charges, transfer, or re-classification. *See Hewitt*, 459 U.S. at 468. An example of a legitimate administrative ground for placement and retention in segregated housing is gang validation, which is not considered a punitive decision. *See Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). "It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt*, 459 U.S. at 468.

#### i. <u>*Initial Placement* in Administrative Segregation</u>

In *Hewitt*, the United States Supreme Court held that a lesser quantum of process than the *Wolff* standards is due when a prisoner is placed in *administrative* segregation than when a prisoner is placed in *disciplinary* segregation. *See Toussaint I*, 801 F.2d at 1099. The process due for initial placement in administrative segregation is as follows: (1) "an informal nonadversary hearing" must be held "within a reasonable time after the prisoner is segregated"; (2) the prisoner must be informed of the charges against him or of the prison officials' "reasons for considering segregation"; and (3) the prisoner must be allowed "to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Toussaint I*, 801 F.2d at 1101. In such instances, a prisoner ordinarily is limited to presenting his views in a written statement, although prison

INITIAL REVIEW ORDER BY SCREENING JUDGE - 10

administrators may permit oral presentations in cases where they believe a written statement would be ineffective. *Hewitt*, 459 U.S. at 476.

An "ad-seg" prisoner is *not* entitled to: (1) detailed written notice of charges; (2) representation by counsel or counsel-substitute; (3) an opportunity to present witnesses; (4) an opportunity to cross-examine witnesses; (5) a written decision describing the reasons for placing the prisoner in administrative segregation; or (6) disclosure of the identity of confidential informants providing information leading to the placement of the prisoner in administrative segregation. *Toussaint I*, 801 F.2d at 1100–01 (citations omitted); *Wolff*, 418 U.S. at 567–68; *Walker*, 14 F.3d at 1420.

In administrative segregation decisionmaking, prison officials may rely mainly on subjective factors because of the security reasons behind such segregation:

> In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners inter se, and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on purely subjective evaluations and on predictions of future behavior; indeed, the administrators must predict not just one inmate's future actions, as in parole, but those of an entire institution.

*Toussaint I*, 801 F.2d at 1100 (citing *Hewitt*, 459 U.S. at 474).

      ii.    <u>*Retention* in Administrative Segregation</u>

The process due for retaining a prisoner in administrative segregation is that prison

officials must conduct a periodic review of the segregation decision, but the intervals at which that review occurs is at the discretion of prison officials. *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990), *cert. denied*, 502 U.S. 874 (1991) ("*Toussaint II* "). The United States Court of Appeals for the Ninth Circuit has upheld periodic reviews occurring every 120 days as comporting with due process. *Id*. Again, due process for periodic reviews does *not* require a detailed written notice of the charges, representation by counsel or other inmates, or an opportunity to present witnesses, or a hearing. *Toussaint I*, 801 F.2d at 1100–01.

> 2. **"No Shred of Evidence" Exception to a Liberty-Interest Showing in Procedural Due Process Claims**

An exception allowing a prisoner to pursue a procedural due process claim without showing a liberty interest may apply if prison officials have found a prisoner guilty of a disciplinary infraction at a hearing where "no shred of evidence of the inmate's guilt is presented." *Burnsworth v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999). In that limited circumstance, a prisoner is entitled to pursue a due process claim even if he or she did not demonstrate a cognizable liberty interest, because a disciplinary hearing finding unsupported by evidence violates due process "wholly apart from the conditions of confinement and without regard to the *Sandin* requirements." *Nonnette v. Small*, 316 F.3d 872, 878-79 (9th Cir. 2002).

> 3. **Standard of Law for *Substantive* Due Process Claims regarding Segregation**

A *substantive* due process argument challenging segregation is most often presented as a claim that prison officials may not place a prisoner in segregation unless they show

that the prisoner, in fact, *meets certain criteria warranting that placement*, in contrast to a *procedural* due process argument, which would be that officials *must use certain procedures* to decide whether the prisoner meets the criteria for segregation. Substantive due process is about *what* is decided, rather than *how* it is decided.

### A. *Segregation Conditions that Shock the Conscience*

The Fourteenth Amendment's Substantive Due Process Clause prohibits prison officials from acting in a manner that "shocks the conscience," that is "brutal and offensive," or that "violates the decencies of civilized conduct," regardless of how much process is afforded. *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (punctuation altered).

However, an imprisoned felon usually cannot bring such a claim under the Fourteenth Amendment, because it is better addressed under the Eighth Amendment's Cruel and Unusual Punishment Clause. Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

### B. *Segregation Claims Warranting Strict Scrutiny*

Strict scrutiny of a segregation claim is warranted where a state action utilizes racial or other suspect classifications or implicates fundamental rights. *Richardson v. City and County of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997). The courts have been warned to narrowly construe these categories of claims because substantive due process protection is

reserved for "those personal activities and decisions that this Court has identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that they are protected by the Fourteenth Amendment." *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997) (asserted right to assistance in committing suicide was not a fundamental liberty interest protected by the Due Process Clause); *see also Doe v. Tandeske*, 361 F.3d 594 (9th Cir. 2004) ("persons who have been convicted of serious sex offenses do not have a fundamental right to be free from the registration and notification requirements set forth in the Alaska statute").

### C. *Rational Basis Applied to Most Claims*

Another way to state a cognizable substantive due process violation is to show that a prisoner's placement in segregation was an arbitrary official action that was not "rationally related to a legitimate governmental purpose." *Richardson v. City and County of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997). "Arbitrary" and "irrational" means an action has no substantial relation to the public health, safety, morals, or general welfare. *See Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). For example, courts have rejected prisoners' challenges that segregating them for gang-related issues is not rationally related to prison safety. *See Richardson*, 124 F.3d at at 1162.

### REVIEW OF PLAINTIFF'S CLAIMS

1. **Claims 2(a) and (b): Defendants Lytle and Anderson violated Plaintiff's due process rights by transferring him to a close custody unit, D-1 on April 8, 2019, without adequate due process; Claims 2(c) and (d) that Defendants Lytle and Anderson transferred Plaintiff to "The Hole" on June 12, 2019, without adequate due process**

Plaintiff cannot proceed on his claim that Defendants Lytle and Anderson violated

his procedural due process rights on April 8, 2019, and June 12, 2019. He must state additional facts meeting the elements of a procedural due process claim, as explained above in the standards of law section. The Clerk of Court will be ordered to open a new case for Claims 2(a), (b), (c), and (d). Within 60 days after entry of this Order, Plaintiff shall file one complete second amended complaint addressing these four claims.

No other claims or defendants shall be included in the second amended complaint in the new case. For example, allegations of conspiracy shall not be included in this claim, as they will be addressed in the present case. Plaintiff must attach to his second amended complaint a copy of any writing generated by the prison (not created by Plaintiff) regarding these two transfers. and he may attach no more than 15 pages of exhibits that Plaintiff generated in his defense. No other items may be attached.

2. **Claim 2(e): Defendant McKay transferred Plaintiff from close custody to administrative segregation on July 17, 2019, with no notice of charges or meaningful opportunity to be heard; Claim 2(f) Defendant Gentry kept Plaintiff in administrative segregation with no hearing; Claim 2(g) and (h): Defendant Christensen and McKay violated Plaintiff's due process rights by leaving Plaintiff in administrative segregation a third time without a hearing**

Plaintiff asserts that Defendants McKay, Gentry, and Christensen violated his rights regarding his placement and retention in administrative segregation on and after July 17, 2019. There are insufficient facts to support these claims. The Clerk of Court will be ordered to open a new case for Claims 2(e), (f), (g), and (h). Within 60 days after entry of this Order, Plaintiff shall file one complete second amended complaint addressing these four claims.

No other claims or defendants shall be included in the second amended complaint

in the new case. For example, allegations of conspiracy shall not be included in this claim, as they will be addressed in the present case. Plaintiff must attach to his second amended complaint a copy of any writing generated by the prison (not created by Plaintiff) regarding his placement and retention in segregation. He must also attach no more than 15 pages of his written statements (or a summary of his oral statements) made in response to his initial placement and two retentions in segregation on and after July 17. 2019. No other items may be attached.

3. **Claim 2(i): Defendant Miller entered a finding of guilty without any evidence on DOR #201677 on April 1, 2020**

It is not clear from the Amended Complaint, but it appears that Plaintiff was charged with a Disciplinary Offense Report (DOR) for making a false Prison Rape Elimination Act (PREA) complaint with the Ada County Sheriff. On April 1, 2020, Sergeant Miller confirmed Plaintiff's guilt at a DOR hearing. On appeal, Warden Christensen said that the body of the report supported the findings of the DOR beyond the required "some evidence" standard. Plaintiff asserts that there was *no* evidence.

To state a claim, Plaintiff must provide additional facts meeting the elements of this particular type of due process cause of action. The Clerk of Court will be ordered to open a new case for Claim 2(i). Within 60 days after entry of this Order, Plaintiff shall file one complete second amended complaint setting forth his claims that Sergeant Miller violated his due process rights by confirming Plaintiff's guilt at the DOR hearing, despite having no evidence.

No other claims or defendants shall be included in the second amended complaint

in the new case. For example, allegations of conspiracy shall not be included in this claim, as they will be addressed in the present case. Plaintiff shall attach to his second amended complaint a copy of the DOR, the hearing findings, the appeal, any other document generated by the prison (not created by Plaintiff) regarding the DOR, and no more than 15 pages of exhibits that Plaintiff generated in his defense. No other items shall be attached.

## ORDER

**IT IS ORDERED:**

1. The Clerk of Court shall sever the access to courts claims presented in this case into the new cases set forth above. The cases all shall be assigned to this Court, rather than randomly assigned among the judges. The Clerk of Court shall provide notice to Plaintiff of the new case numbers.

2. Plaintiff must file a second amended complaint in each new case within **60 days** after entry of this Order.

3. Plaintiff shall not file anything further in any of the cases until the Court issues successive review orders in the cases.

DATED: June 18, 2020

_____
David C. Nye
Chief U.S. District Court Judge